THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD et al., Respondents-Appellees.

First District (6th Division) No. 1—96—2063

Opinion filed June 30, 1997.

Marilyn F. Johnson and Janet B. Johnson, both of Board of Education, of Chicago, for petitioner.

James B. Dykehouse, of Witwer, Poltrock & Giampietro, of Chicago, for respondents.

JUSTICE ZWICK delivered the opinion of the court:

This cause comes before us in a direct appeal from an opinion and order of the Illinois Educational Labor Relations Board (IELRB) which held that the decision previously issued by the administrative law judge (ALJ) was final and binding on the parties.

The stipulated record established that on March 12, 1990, Cecilia Bitner was hired as a teacher by the Board of Education of the City of Chicago (Board of Education). On that date, Bitner commenced the mandatory three-year probationary term prior to attaining tenure. Bitner received a performance rating of "excellent" for the 1990-91 and 1991-92 school years. On February 3, 1993, approximately five weeks before she would attain tenure, Bitner received an "E-1 Notice" of unsatisfactory performance from the principal of the elementary school where she taught. On March 12, 1993, the three-year probationary term expired, and Bitner became eligible to attain tenure. Bitner received an "E-2 Notice" of unsatisfactory performance on April 4, 1993, based upon her probationary status.

On June 15, 1993, the Chicago Teachers Union filed a grievance on behalf of Bitner, alleging that the Board of Education had violated the collective bargaining agreement which was in force by evaluating Bitner's performance according to the procedures for probationary teachers as opposed to following the procedures for tenured teachers. This grievance was denied by Bitner's principal on June 29, 1993. On August 25, 1993, Bitner's employment was terminated for unsatisfactory performance. The June 15, 1993, grievance was subsequently denied by the general superintendent of schools on March 24, 1994.

The union made a timely demand for arbitration of the grievance on February 9, 1994, and the arbitrator issued a final and binding award on October 12, 1994. In that award, the arbitrator found that the Board of Education had violated the collective bargaining agreement by utilizing the evaluation procedures for probationary employees rather than those for tenured employees. The arbitrator further found that Bitner should be reinstated as a tenured teacher and was entitled to recover all lost wages and benefits. The Board of Education refused to comply with the arbitrator's award, claiming that it was against public policy. On February 24, 1995, the IELRB issued a complaint against the Board of Education, alleging an unfair labor practice based upon the Board of Education's refusal to comply with the final and binding award by the arbitrator. On August 28, 1995, the ALJ for the IELRB issued his recommended decision and order, which found that the refusal to comply with the arbitrator's decision violated sections 14(a)(8) and 14(a)(1) of the Illinois Educational Labor Relations Act (115 ILCS 5/14(a)(1), (a)(8) (West 1994)). In addition, the ALJ issued an order to show cause why sanctions should not be imposed against the Board of Education for failure to comply with the final and binding award.

This decision was received by the Board of Education on August 30, 1995, and it had until September 20, 1995, to file exceptions

thereto. The Board of Education failed to timely file exceptions to the ALJ's decision, but on September 22, 1995, two days after expiration of the filing deadline, the Board of Education requested extension of time to file exceptions. This request was ultimately denied by the IELRB on October 2, 1995.

On September 27, 1995, the Board of Education filed a response to the ALJ's order to show cause regarding imposition of sanctions. On October 27, 1995, the ALJ issued a supplemental decision declining to impose sanctions against the Board of Education. On November 21, 1995, the Board of Education filed exceptions that related to the ALJ's original decision. In those exceptions, the Board of Education argued that it objected to the ALJ's decision because it was against public policy. On May 14, 1996, the IELRB issued its opinion, which held that the original decision by the ALJ became final and binding as of September 20, 1995, and the Board of Education has appealed that ruling.

■ It is established that a party aggrieved by an agency action must pursue all available administrative remedies before seeking judicial review. *Phillips v. Graham*, 86 Ill. 2d 274, 289, 427 N.E.2d 550 (1981). Any argument or objection that was not raised during the pendency of the administrative proceeding is deemed waived and cannot be asserted on judicial review of the agency decision. *Department of Central Management Services v. Illinois State Labor Relations Board*, 278 Ill. App. 3d 79, 82, 662 N.E.2d 131 (1996); *Moore v. Illinois State Labor Relations Board*, 206 Ill. App. 3d 327, 338-39, 564 N.E.2d 213 (1990).

■ The Illinois Administrative Code specifically provides that a party may file exceptions to an administrative law judge's recommended decision and order no later than 21 days after receipt of the recommended decision; if no exceptions are filed within 21 days after the parties receive the recommended decision and order, the parties will be deemed to have waived their exceptions. 80 Ill. Adm. Code § 1120.50(a) (1994).

The decision of the ALJ was received by the Board of Education on August 30, 1995. In order to preserve the right to challenge this decision, the Board of Education was obligated to file exceptions thereto within 21 days of that date. Thus, it was incumbent upon the Board of Education to file any exceptions to the ALJ's ruling by September 20, 1995, and the failure to do so constituted a waiver of the right to contest the propriety of that decision.

In the exceptions that were ultimately filed on November 21, 1995, the Board of Education sought to avoid compliance with the ALJ's decision on the ground that it was contrary to public policy.

However, that assertion was waived because the exceptions were untimely.[1] In addition, the Board of Education's request for an extension of time to file exceptions was not made within the permitted 21-day time period. See 80 Ill. Adm. Code § 1100.30(d) (1994).

In urging us to disregard its waiver of the right to file exceptions, the Board of Education relies primarily upon the Illinois Supreme Court's opinion in *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 671 N.E.2d 668 (1996). We note, however, that the *AFSCME* decision was predicated upon facts that are radically different from those presented here.

In that case, the supreme court held that the Department of Children and Family Services (DCFS) had not waived its right to terminate the employment of a case worker even though the agency had failed to comply with the requirements of timely disciplinary procedures specified in the collective bargaining agreement. The underlying facts of that case demonstrate that the worker whose employment DCFS sought to terminate had reported that three children included among her case responsibilities were "doing fine," when, in fact, the children had previously died in an accidental fire in their home. In addition, the case worker had failed to submit case plans for the family for three years.

It is amply apparent that the public policy concerns that dominated the supreme court's analysis are not involved in the case at bar. Although we recognize the importance of quality public education, we are not inclined to equate the egregious conduct of the case worker in *AFSCME* with Bitner's actions. The failure to receive a satisfactory performance review cannot be compared to the abandonment of the obligation to safeguard the health, safety and lives of children placed in the care of an agency such as DCFS. Accordingly, we hold that the supreme court's opinion in that case is distinguishable and does not govern the instant case.

Implicit in the Board of Education's argument is the assertion that, in order to adhere to the public policy of providing a quality public education, the Board of Education is permitted to ignore the filing deadlines specified in section 1120.50(a). Acceptance of this assertion would render meaningless the clear and unambiguous terms of the Illinois Administrative Code as well as the protections guaranteed by the collective bargaining agreement. We reject the Board of Education's argument.

---

[1]The 21-day time period for filing exceptions was not tolled by the ALJ's order to show cause regarding sanctions pursuant to section 1120.80(h). 80 Ill. Adm. Code § 1120.80(h) (1994).

■ The failure to timely file exceptions to the ALJ's ruling rendered it a final administrative decision, which was binding upon the parties. See 11 Ill. Adm. Code §§ 502.50, 502.104(a)(3) (1994). Accordingly, we are precluded from considering the Board of Education's claim that the ALJ's decision must be set aside on public policy grounds.

For the foregoing reasons, we affirm the decision of the IELRB, and an order of enforcement is hereby issued pursuant to Supreme Court Rule 335(h) (134 Ill. 2d R. 335(h)).

Affirmed and order of enforcement issued.

GREIMAN and QUINN, JJ., concur.